**Gladys DUNN, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

Civ. A. No. 85–5849.

United States District Court, D. New Jersey.

July 7, 1989.

Richard E. Yaskin, Jacobs & Schwalbe, Voorhees, N.J., for plaintiff.

Samuel A. Alito, Jr., U.S. Atty. by Thomas A. Bryan, Asst. U.S. Atty., Newark, N.J., for defendant.

## OPINION

RODRIGUEZ, District Judge.

This is an action under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Secretary denying plaintiff's claim for Supplemental Security Income (SSI) benefits. For the reasons set forth, the court will vacate the decision of the Secretary and remand the case for further proceedings consistent with this opinion.

### I.

Plaintiff, Gladys Dunn, was born July 23, 1923 and was 61 years old at the time of her hearing for disability insurance benefits. She testified that she graduated from nursing school in 1947 and that she occasionally took classes and seminars related to her employment. She was employed as a medical-surgical registered nurse until her disabilities caused her to cease work in April, 1984. Plaintiff claimed that she stopped working because she was unable to ambulate with sufficient speed and dexterity to carry out her duties as a nurse.

Plaintiff filed an application for disability insurance benefits on November 1, 1984. Her claim was denied initially and on reconsideration. Plaintiff requested and was granted a *de novo* hearing before an Administrative Law Judge (ALJ). On June 27, 1985 the ALJ issued a decision concluding that plaintiff was not under a disability as defined by the Social Security Act. On October 24, 1985, the Appeals Council denied plaintiff's request for review rendering the ALJ's decision final. Plaintiff filed this action on December 19, 1985.

### II.

■ Title 42 U.S.C. §§ 405(g) and 1383(c)(3) set forth the standard of review to be utilized by this court. Upon review, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g) (1983). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)); *see also Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983). While deference is given to administrative decisions, the court has a responsibility to scrutinize the entire record and if it is not satisfied that the Secretary's decision is supported by substantial evidence then it must reverse or remand accordingly. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir.1981). In addition, "even if the Secretary's factual findings are supported by substantial evidence, [a] court may review whether the administrative determination was made upon correct legal standards." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (quoting *Curtin v. Harris*, 508 F.Supp. 791, 793 (D.N.J.1981)).

### III.

Congress has defined disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (1983).

■ Disability is determined by the application of a five-step analysis, codified at 20 C.F.R. §§ 404.1520 (subpt. P, App. 2) and 416.920 (1988). The five steps are summarized as follows:

1. The Secretary determines whether the claimant is currently engaged in substantial gainful activity. If so, she will not be found disabled. 20 C.F.R. § 404, 1520(b) (1988).

2. If claimant is found not to be engaged in substantial gainful activity, the Secretary will determine whether the medical evidence indicates that the claimant suffers from a "severe" impairment. 20 C.F.R. §§ 404.1520(c); 416.920(c) (1988). If not, then claimant is not disabled.

3. If the claimant is found to suffer a severe impairment which has lasted or is expected to continue for a period of not less than 12 months, then the Secretary determines whether the impairment is listed in Appendix 1, Subpart P of Reg. No. 4, or is equal to a listed impairment. 20 C.F.R. §§ 404.1520(d); 416.920(d) (1988). If so, claimant is declared disabled.

4. If claimant does not have an Appendix 1 impairment or its equivalent, the Secretary must determine if the claimant is capable of performing her past relevant work despite the severe impairment. 20 C.F.R. § 404.1520(e); § 416.920(e). If she can, then she is not disabled.

5. If the claimant is not able to perform her past relevant work, the Secretary must determine whether, considering the claimant's age, education, past work experience and residual capacity, she is capable of performing other work that exists in the national economy. 20 C.F.R. § 404.1520(f); § 416.920(f) (1988).

*Brewster v. Heckler*, 786 F.2d 581, 583–84 (3d Cir.1986); *Santise v. Schweiker*, 676 F.2d 925, 927 (3d Cir.1982). Also, once the claimant has demonstrated she is unable to return to her former occupation the burden shifts to the Secretary "to show the claimant, given her age, education and work experience, has the capacity to perform specific jobs that exist in the national economy." *Wallace v. Secretary of Health and Human Services*, 586 F.Supp. 395, 396 (D.N.J.1984) (quoting *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir.1979)).

In the proceedings below, the ALJ found that plaintiff suffers from a severe impairment resulting from essential hypertension, recurring cellulitis of the left lower extremity, degenerative arthritis of the left knee, osteoarthritis, and complaints of headaches and dizziness. He further concluded that plaintiff has not engaged in substantial gainful activity since the onset of her alleged disability and that she does not have an impairment or combination of impairments listed in or medically equivalent to those listed in Appendix 1, Subpart P, of Regulation Number 4. Also, the Secretary determined that plaintiff is unable to perform her past relevant work as a nurse, but retains a residual functional capacity consistent with a full range of sedentary work. A vocational expert testified that plaintiff has acquired certain work skills which would transfer to specific occupations and that those occupations existed in substantial numbers in the economy. Therefore, the ALJ concluded that based on plaintiff's age, education and past work experience, plaintiff is capable of performing other relevant work and must be found "not disabled." The ALJ also found plaintiff to be "62 years old, which is defined as advanced age." Record at 15.

On appeal plaintiff raises three claims: that the ALJ erred in concluding that plaintiff's impairments do not meet or equal the listed impairments in Appendix 1, Subpart P, Regulation Number 4; that plaintiff retains a residual functional capacity of less than a sedentary level, and possesses no skills which are transferable; and that the ALJ erred in defining plaintiff's age as "advanced" when the proper category is "of retirement age." As a result of the ALJ's error in defining plaintiff's age, plaintiff argues that the Secretary failed to show that plaintiff's work skills were not only transferable, but "highly marketable."

### A.

First, plaintiff argues that her impairments meet or equal the listed impairments in Appendix 1 of Subpart P of Regulation Number 4. Specifically, plaintiff claims that her conditions meet or are equivalent

to the criteria of Listing 1.03 and Listing 4.12. These Listings require:

1.03. Arthritis of a major weight-bearing joint (due to any cause) with limitation of motion and enlargement or effusion in the affected joint, as well as a history of joint pain and stiffness. With: A. Gross and anatomical deformities such as subluxation, contracture, bony or fibrous ankylosis or instability; OR C. Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint and return to full weight-bearing status did not occur, or is not expected to occur, within 12 months of onset.

4.12. Chronic venus insufficiency of the lower extremity with incompetency or obstruction of the deep venus return, associated with superficial varicosities, extensive brawny edema, statis dermatitis, and recurrent or persistent ulceration which has not healed following at least three months of prescribed medical or surgical therapy.

The purpose of these Listings is to identify those impairments considered severe enough to prevent a person from performing any substantial gainful employment. 20 C.F.R. § 404.1525(a) (1988). An "impairment(s) is medically equivalent to a listed impairment in Appendix I if the medical findings are at least equal in severity and duration to the listed findings." 20 C.F.R. § 404.1526(a) (1988).

In the present case there is substantial evidence to support the ALJ's conclusion that plaintiff's conditions do not meet or are not equivalent to the listed impairments in Appendix I. Plaintiff's cellulitis is not continuous and reoccurs at sporadic intervals with no limitation on the range of motion. Her arthritis is accompanied by only mild effusion with no evidence of instability or limitation of motion and there is no evidence of joint erosion sufficient to preclude ambulation. There is also no evidence of either dermatitis or ulceration sufficient to meet Listing 4.12.

## B.

Second, plaintiff argues that she retains a residual functional capacity of less than sedentary work, and possesses no skills which are transferable. As a result, she asserts that she is incapable of performing alternate work existing in the national economy. The ALJ, however, properly concluded that plaintiff had a residual functional capacity to perform sedentary work and that her skills as a nurse were transferable to other medical related occupations. The vocational expert testified at the hearing that plaintiff had transferable skills such as her "ability to understand the use and techniques and procedures of nursing" as well as her familiarity with medical terminology, procedures and equipment. Record at 43, 46. The expert also testified that plaintiff's skills could be transferred to specific jobs such as personnel nurse placement service administrator, or a medical supply clerk, records clerk, admissions clerk or ward clerk in a hospital or nursing home. Record at 45. The vocational expert also listed several area hospitals employing such personnel. Record at 46.

## C.

Finally, plaintiff claims that the ALJ defined plaintiff's age as "advanced age" (55 years and older) when the more appropriate category was "close to retirement age" (60–64 years of age). Plaintiff argues that the ALJ should have applied Regulation 20 C.F.R. § 404.1563(d) (1988) which provides:

If you are close to retirement age (60–64) and have a severe impairment, we will not consider you able to adjust to sedentary or light work unless you have skills which are *highly marketable*. (emphasis added).

Therefore, plaintiff contends that the ALJ was required to make a finding that plaintiff's skills were "highly marketable" and failed to do so. In response, the government contends that although "the ALJ did not specifically discuss the marketability of plaintiff's skills, the vocational expert's testimony of *specific* existing jobs that plaintiff could perform indicates that her skills are marketable (emphasis added)." Defendant's Memorandum of Law at 17. Therefore, the Secretary asserts that the Administrative Law Judge "properly determined

that plaintiff had acquired skills which were both highly marketable and transferable, and his finding that plaintiff could engage in substantial gainful activity is supported by substantial evidence." *Id.*

■ The language of § 404.1563(d) is clear. In the absence of a finding that the skills of a person close to retirement age are highly marketable, those skills cannot be found transferable. *Pineault v. Secretary of Health and Human Services,* 848 F.2d 9, 11 (1st Cir.1988); *Varley v. Secretary of Health and Human Services,* 820 F.2d 777, 781–82 (6th Cir.1987); *Renner v. Heckler,* 786 F.2d 1421, 1424 (9th Cir.1986); *Tom v. Heckler,* 779 F.2d 1250, 1256 (7th Cir.1985); *see also Brewster v. Heckler,* 786 F.2d 581, 586 (3d Cir.1986). Under the regulations, age plays an important role in the determination of whether a claimant's skills are transferable. *Tom,* 779 F.2d at 1256. The Secretary has recognized that there is a direct relationship between age and the likelihood of employment. 43 Fed. Reg. 55353 (Nov. 28, 1978). The advantage of having acquired certain skills or training may no longer offset the vocational difficulties associated with advanced age. *Varley,* 820 F.2d at 781, (citations omitted). As the Sixth Circuit stated in *Varley:*

> The regulation sets forth a straight forward command that before it can be determined that a claimant over sixty years of age ... is able to transfer those skills to sedentary work, it must first be shown that the skills are highly marketable. This proposition is intuitively reasonable in that it reflects the reality that older persons who do not possess highly marketable skills, will find it difficult to obtain *any* employment.

820 F.2d at 781–82 (emphasis in original).

■ This court finds that the claimant was entitled to have the ALJ consider the issue of marketability in the determination of whether she was disabled. In determining marketability, other courts have determined that in the absence of a clear definition of "marketability" in the statute or regulations the court should refer to the definition of "age" in the preceding subsection of the regulation. " 'Age' not only

refers to 'how old you are (your chronological age)' but also to 'the extent to which your age affects your ability to adapt to a new work situation and *to do work in competition with others.'* 20 C.F.R. § 404.1563(a) (emphasis added)." *Renner,* 786 F.2d at 1425 (quoting *Tom,* 779 F.2d at 1257 n. 11). This court believes this approach is correct for determining whether skills are highly marketable and therefore, whether a claimant of retirement age is capable of performing other work that exists in the economy.

■ The Secretary claims that the vocational expert testified that plaintiff had acquired certain skills, that these skills would be transferable to specific sedentary jobs, and that these jobs exist in the local economy. The Secretary further claims that this testimony sufficiently reached the issue of transferability so as to satisfy the "highly marketable" requirement of § 404.1563(d) (1988). This court rejects this argument. The terms "transferable" and "highly marketable" are not synonymous. The structure of the regulations provide that there be progressively more liberal requirements for older claimants therefore necessitating a separate and specific evaluation of marketability. *See Renner,* 786 F.2d at 1425; *Varley,* 820 F.2d at 781. This evaluation "requires of the ALJ a 'minimal level of articulation' of his assessment of the evidence to show that he considered that which the law requires him to consider." *Tom,* 779 F.2d at 1257 (citations omitted). Here, the record discloses that the ALJ gave no consideration to the issue of marketability. The words "highly marketable" are not used, nor is the relevant regulation cited.

On the basis of the record, this court cannot determine whether plaintiff's skills are marketable. Accordingly, this matter is vacated and remanded with directions to the Secretary for disposition on the issue of marketability.

An appropriate order will be entered.